**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| **v.** | : | |
| **MEADIA HEIGHTS GOLF CLUB,** | : | **COMPLAINT AND JURY DEMAND** |
| **Defendant.** | : | |

**NATURE OF ACTION**

The United States Equal Employment Opportunity Commission (the "Commission"), brings this action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of national origin and to provide appropriate relief to Mariano Garcia, Puerto Rican, who was adversely affected by such practices while employed by Defendant, Meadia Heights Golf Club, ("Defendant") and to enjoin Defendant from engaging in discrimination and any other employment practice which discriminates on the basis of national origin.

As alleged with greater particularity in paragraph 7 below, the Commission alleges that during his employment Mariano Garcia was subjected to a hostile work environment based on his national origin, Puerto Rican. The national origin harassment included death threats, disparaging verbal comments, and physical assault by a co-worker. Despite numerous complaints to Defendant about the hostile work environment, Defendant failed to take prompt, effective measures to address the national origin harassment. As a result of the intimidating and

hostile work environment, Mariano Garcia was constructively discharged from his employment and has suffered damages, including but not limited to, emotional distress damages and back pay losses.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times mentioned herein, Defendant, Meadia Heights Golf Club (the "Employer"), has continuously been doing business in the Commonwealth of Pennsylvania and the City of Lancaster, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**STATEMENT OF CLAIMS**

6. More than thirty days prior to the institution of this lawsuit, Mariano Garcia filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least January 1997, Defendant Employer has engaged in unlawful employment practices at its Lancaster, Pennsylvania facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by discriminating against Mariano Garcia in the terms, conditions and privileges of his employment based on his national origin. The unlawful employment practices included the following:

(a) Mariano Garcia, Puerto Rican, began working for Defendant as a Greens Keeper in 1988. Mr. Mariano reported to Bob Rosensteel (White), Foreman and Tom Manchak (White), Superintendent.

(b) Throughout his employment, Mariano Garcia was harassed by co-worker Ron Walter (White), in the form of incessant derogatory comments based on Mr. Garcia's Puerto Rican national origin.

(c) Ron Walter openly displayed a discriminatory animus towards Hispanic and Blacks in the workplace. For example, Ron Walter often referred to Mariano Garcia and other Hispanics as "spics." Mr. Walter also stated that Hispanics were uneducated and made the offensive comment about Hispanics, stating, "you can't teach em' and you can't shoot em.'"

(d) Ron Walter often made blanket derogatory comments about Hispanics and Blacks, stating that they were "all lazy." Mr. Walter commonly referred to Blacks in the

military as "sand niggers."

(e) On another occasion, during the course of discussing politics, Ron Walter commented that "spics" and "niggers" are running the country.

(f) Mariano Garcia, as well as other employees, have repeatedly complained to Bob Rosensteel and Tom Manchak about Ron Walter's ethincally offensive conduct toward Mr. Garcia because of his national origin, but Defendant took no action. As a result of Defendant's failure to take prompt, effective measures to address the hostile work environment, the harassment escalated to the point where Ron Walter threatened to shoot Mariano Garcia. Furthermore, Ron Walter physically attacked Mr. Garcia

(g) On or about April 4, 2004, Mariano Garcia and Ron Walter had an argument over work hours. During this argument, Walter called Mariano Mr. Garcia a "spic" and then jumped across a table and physically attacked Mr. Garcia by grabbing his shirt collar. In the course of this assault, Ron Walter threatened to shoot Mr. Garcia with a gun that Mr. Walter had in his truck, stating that he [Walter] "had a bullet with Mariano Garcia's name on it" and, "I'm going to shoot you in the head." This physical assault was witnessed by several employees who in return reported the incident to Defendant.

(h) In response to the assault and death threat upon Mariano Garica, Defendant placed Mr. Garcia and Ron Walter on a four (4) day suspension and 90-days probation. Defendant further told Mr. Garcia and Walter to simply "avoid each other."

(i) Following the assault and death threats, Mr. Garcia avoided using the Defendant's Pro Shop for his work breaks, avoided use of the restroom, and attempted to avoid Walter when he needed to punch his time card. Mr. Garcia tried to avoid any contact with Mr.

Walter for fear that he would be hurt or killed by Ron Walter. Fearing for his personal safety, Mariano Garcia was constructively discharged from his employment with Defendant on or about June 2004.

8. The effect of the practices complained of in paragraph 7 above, has been to deprive Mariano Garcia of equal employment opportunities and otherwise affect adversely his status as an employees because of his national origin.

9. The unlawful employment practices complained of in paragraph 7 above were intentional.

10. The unlawful employment practices complained of in paragraph 7 were done with malice or with reckless indifference to the federally protected rights of Mariano Garcia.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in sexual harassment and creating a hostile environment based on national origin and any other employment practice which discriminates on the basis of national origin or retaliation.

B. Order Defendant employer to institute and carry out policies, practices, and programs which provide a work environment free of national origin harassment and retaliation and provide equal employment opportunities for all employees.

C. Order Defendant employer to make whole Mr. Garcia, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative

relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant employer to make whole Mr. Garcia by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including compensatory damages for pain and suffering, in amounts to be determined at trial.

E. Order Defendant Employer to institute and carry out complaint procedures which encourage employees to come forward with complaints regarding violations of its policies against discrimination, harassment and retaliation.

F. Order Defendant Employer to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-harassment; and requiring all managers and supervisors to report any incidents and/or complaints of harassment and/or retaliation of which they become aware to the department charged with handling such complaints.

G. Order Defendant to pay Mr. Garcia punitive damages for its malicious and reckless conduct described in the paragraphs above, in amounts to be determined at trial.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

RONALD S. COOPER
GENERAL COUNSEL

JAMES L. LEE
DEPUTY GENERAL COUNSEL

GWENDOLYN YOUNG REAMS
Associate General Counsel
Washington, D.C.

JACQUELINE H. McNAIR
Regional Attorney

JUDITH A. O'BOYLE
Supervisory Trial Attorney

TERRENCE R. COOK
Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
21 S. 5th Street, Suite 400
Philadelphia PA 19106
Telephone: (215) 440-2688
Facsimile: (215) 440-2848